# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

JEANETTE WORRELL,

      Plaintiff,

v.                                   CASE NO:  8:15-CV-2866-T-30AEP

COMMUNITY THERAPY HOME CARE,
INC. and ELAINE R. MACCOLLOM,

      Defendants.

_____/

# <u>ORDER</u>

THIS CAUSE comes before the Court upon Defendants' Dispositive Motion for Summary Judgment and for Sanctions and Supporting Memorandum of Law (Dkt. 30) and Plaintiff's Memorandum in Opposition (Dkt. 35).  The Court, upon review of the motion, response, and being otherwise advised in the premises, concludes that the motion should be granted in part and denied in part.  Specifically, the Court grants summary judgment in Defendants' favor on Plaintiff's overtime claims, to the extent that Plaintiff seeks overtime compensation in this case for the same period of time of her bankruptcy case, in which she entirely omitted her employment and wages from Defendant Community Therapy Home Care, Inc. on the bankruptcy schedules.  Defendants' motion is otherwise denied.

## BACKGROUND

On December 15, 2015, Plaintiff Jeanette Worrell filed the instant lawsuit under the Fair Labor Standards Act ("FLSA") against her former employer, Defendant Community Therapy Home Care, Inc. ("CTHC"), seeking unpaid overtime wages and liquidated damages for all hours worked over forty per week throughout her employment (Count I) and a claim of unjust enrichment related to CTHC's failure to pay her for "personal expenditures" CTHC required her to make on its behalf (Count II) (Dkt. 1). Plaintiff's FLSA claim is also against individual Defendant Elaine MacCollom, CTHC's owner.

After her FLSA suit was filed, Plaintiff explained in her answers to the Court's interrogatories and at her deposition that she is seeking recovery of many hundreds of hours of unpaid overtime wages that she accrued during her employment with CTHC from March 2010, the date she began employment, through August 2015. CTHC employed Plaintiff as an Office Administrator. She handled "all aspects of the home health agency office; including, but not limited to, scheduling, staffing, billing, hiring/terminating, IT programming, sales, customer service and purchasing of office supplies." (Dkt. 14). Although Plaintiff was paid for all of the regular hours she worked during this time, she claims that her duties were non-exempt and, therefore, she was entitled to overtime compensation for the hours she worked in excess of forty in a workweek from March 2010, through August 2015.[1]

---

[1] Notably, the FLSA's statute of limitations is two years, or three years for willful conduct. Assuming Plaintiff could prove a willful violation—an issue on which the Court

Plaintiff's deposition was taken on December 16, 2016.  Plaintiff testified that CTHC hired her at an effective hourly rate of $17.00.  Plaintiff worked at that rate until she was given a raise to $20.00 per hour in 2013.  According to Plaintiff, CTHC paid her $2,720.00 each month from March 2010, until she received a raise in 2013; thereafter she was paid $3,200.00 each month until her employment ended in August 2015.  Plaintiff also testified that she performed only non-exempt work throughout her entire employment with CTHC. With respect to her overtime hours, Plaintiff testified that she worked approximately 52 "office hours" per week during her entire employment.  Additionally, she claims overtime for roughly ten hours of extra work she performed in a workweek *after* she left the office. And Plaintiff testified that she worked three out of four weekends every month during her entire employment.  Finally, it appears that Plaintiff is claiming overtime compensation for hours she worked "while on vacation."  (Dkt. 14).  Plaintiff's hand-written notes and calculations, as shown in an attachment to her answers to the Court interrogatories (Dkt. 14), compute her total unpaid overtime wages in the amount of $201,600.00.[2]

On November 2, 2012, approximately three years prior to initiating this case, Plaintiff voluntarily filed for Chapter 7 bankruptcy protection in the Bankruptcy Court, Case No. 8:12-bk-16838-MGW.  Plaintiff was represented by an attorney throughout her bankruptcy

---

expresses no opinion at this time—the statute of limitations would bar any claim prior to December 15, 2012.

[2] The Court expresses no opinion at this time as to the accuracy of these calculations. However, Plaintiff's calculations include time that is barred under the statute of limitations.  And the calculations do not appear to accurately apply the hourly rate of pay.

case.  In the bankruptcy, Plaintiff completed form Schedule I - "Current Income of Individual Debtor."   Schedule I required Plaintiff to, among other things, identify her employers, sources and amounts of income, and to calculate her average monthly income. In addition, Schedule I directed Plaintiff to "describe any increase or decrease in income reasonably anticipated to occur within the year following the filing of this document." Plaintiff completed Schedule I under penalty of perjury and declared that the information she provided therein was true and correct to the best of her knowledge, information, and belief. Schedule I identified "Hospice of FL Suncoast" as her only employer and listed her total gross monthly wages, salary, and commissions in the amount of $1,922.00.  The only other listed source of income was Plaintiff's boyfriend who gave her $975.00 per month.  Plaintiff claimed that her Combined Average Monthly Income was $2,220.00.

Plaintiff's Schedule I did not identify CTHC as her then current employer, nor did it include the $2,720.00 monthly income she was receiving from CTHC at that time.  Plaintiff also failed to disclose the reasonably anticipated income she would receive from CTHC during 2013, the following year.  And, if what Plaintiff says now is true, she failed to list her potential overtime claim as an asset of her estate, an asset that could have provided payment to her creditors.[3]

Plaintiff also completed form Schedule J - "Current Expenditures of Individual Debtor," under penalty of perjury and declared that the information was true and correct to

---

[3] This could have placed CTHC on notice of the potential claim at that time as well, rather than three years later, in 2015.

the best of her knowledge, information, and belief.  Schedule J reflected a "monthly net income" of negative $61.00.  Schedule J also omitted the $2,720.00 monthly income Plaintiff was receiving from CTHC at that time.

Plaintiff also completed a Statement of Financial Affairs, which required, in relevant part, to identify the gross amount of income she had received from her employment from the beginning of the calendar year to the date the bankruptcy was commenced.  Under penalty of perjury, Plaintiff's Statement of Financial Affairs stated that her 2012 wages were $13,685.00.  The Statement of Financial Affairs did not include the wages she had received from CTHC over the preceding ten months in the approximate amount of $27,200.00.

Finally, Plaintiff's "Statement of Current Monthly Income and Means-Test Calculation" form, which was also completed under penalty of perjury, claimed an annualized income of $34,767.84, which was less than the median income for a Florida family of two, and allowed Plaintiff to qualify for Chapter 7 bankruptcy protection.  The Statement did not include her income from CTHC.  Notably, by qualifying for a Chapter 7 bankruptcy, Plaintiff avoided having to pay her creditors a portion of her income.

Plaintiff completed various other forms in connection with her bankruptcy under penalty of perjury, including an amended summary on December 5, 2012.  The forms and summary did not identify any income from CTHC, or list CTHC as her employer.

On February 6, 2013, Plaintiff was granted a discharge: $240,726.00 in unsecured claims were discharged without payment.  On April 8, 2013, Plaintiff's bankruptcy case was closed.  During the pendency of her bankruptcy, specifically from November 2, 2012,

through April 8, 2013, Plaintiff never filed any paper with the Bankruptcy Court that acknowledged that CTHC was her employer, or that she was receiving income for hours worked for CTHC in 2012 or 2013.

In this case, Plaintiff is seeking, in relevant part, overtime compensation for time periods that overlap with the timing of Plaintiff's Chapter 7 bankruptcy case.  Defendants argue that, because Plaintiff intentionally made factually inconsistent positions under oath in the bankruptcy case and before this Court, Plaintiff should be judicially estopped from proceeding here.  Defendants seek summary judgment on all of Plaintiff's claims, dismissal of this case with prejudice, and attorney's fees and costs, based on her blatant omissions in the bankruptcy case, which are now inconsistent with her overtime claims here.

As explained further below, the Court concludes that, under the equitable doctrine of judicial estoppel, Plaintiff shall be judicially estopped from claiming overtime wages for the period of time that her Chapter 7 petition was pending, i.e., from November 2, 2012, (which is really December 15, 2012, based on the statute of limitations), through April 8, 2013, the date the bankruptcy case was closed.

## **DISCUSSION**

The purpose of invoking the equitable doctrine of judicial estoppel is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine,* 532 U.S. 742, 749-50 (2001) (internal quotations and citations omitted).  The Supreme Court has explained that no "exhaustive formula for determining the applicability of judicial estoppel" exists. *Id.* at 751.

The doctrine of judicial estoppel precludes a plaintiff from asserting a claim in a judicial proceeding that contradicts the position taken under oath in a bankruptcy case. *See Parker v. Wendy's Int'l, Inc.,* 365 F.3d 1268, 1271-72 (11th Cir. 2004).

The Eleventh Circuit has explained that, "[j]udicial estoppel is applied to the calculated assertion of divergent sworn positions. The doctrine is designed to prevent parties from making a mockery of justice by inconsistent pleadings." *American Nat'l Bank of Jacksonville v. Federal Dep. Ins. Corp.*, 710 F.2d 1528, 1536 (11th Cir. 1983) (internal citation omitted); *see also In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999) ("The purpose of the doctrine is to protect the integrity of the judicial process by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest.") (internal quotations omitted).

The Eleventh Circuit has outlined two factors whose presence call for the imposition of judicial estoppel: "First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system." *Robinson v. Tyson Foods, Inc.,* 595 F.3d 1269, 1273 (11th Cir. 2010) (quoting the "seminal case ... on the theory of judicial estoppel," *Burnes v. Pemco Aeroplex, Inc.,* 291 F.3d 1282, 1285 (11th Cir. 2002)).[4] These

---

[4] Notably, the Eleventh Circuit has expressly stated (although not *en banc*) that a party invoking judicial estoppel need not have been a party in the prior proceeding. *See Slater v. U.S. Steel Corp.*, 820 F.3d 1193 (11th Cir. 2016). As Judge Tjoflat discussed in his concurring opinion in *Slater*, the doctrine of judicial estoppel in this circuit is confused. *See id.* at 1231. Just recently, the Eleventh Circuit Court of Appeals vacated its prior order in *Slater* and decided to rehear the *Slater* case *en banc*, perhaps to finally settle whether privity is required to argue judicial estoppel. The Eleventh Circuit case number is 12-15548. Accordingly, the Eleventh

two enumerated factors "are not inflexible or exhaustive; rather, *courts must always give due consideration to all of the circumstances of a particular case*" when determining the doctrine's applicability." *Burnes*, 291 F.3d at 1286 (emphasis added).

As *Burnes* demonstrates, where a party fails to list a potential employment claim on her bankruptcy disclosure forms and later brings that claim in court, the first factor is met and the issue becomes one of intent. *See* 291 F.3d at 1285. Intent may be inferred from the record, particularly where a party knew about her undisclosed claims and had a motive to conceal them from the bankruptcy court. *See id.* at 1287. *Burnes* emphasized the importance of full and honest disclosure in bankruptcy proceedings, noting that it is "crucial" to the system's "effective functioning." *Id.* at 1286. Creditors and the bankruptcy courts rely on the accuracy of a debtor's disclosure statements when considering whether to agree to and approve a no asset discharge. "[T]he importance of full and honest disclosure cannot be overstated." *Id.* The "duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court." *Id.* In *Robinson*, the Eleventh Circuit pointed out that this continuing duty to disclose applies to "proceedings under Chapter 13 and Chapter 7 alike because 'any distinction between the types of bankruptcies available is not sufficient enough to affect the applicability of judicial estoppel because the need for complete and honest disclosure exists in all types of bankruptcies.'" 595 F.3d at 1274 (quoting *De Leon v. Comcar Industries, Inc.*, 321 F.3d 1289, 1291 (11th Cir. 2003)).

---

Circuit will likely clarify its application of judicial estoppel in bankruptcy cases in its *en banc* rehearing of *Slater*.

Unlike the instant case, which is an overtime case under the FLSA, *Robinson* and *Burnes* were cases that involved federal employment discrimination claims that the plaintiffs omitted in their prior bankruptcy cases.  In both cases, the plaintiffs failed to disclose the existence of the pending discrimination lawsuits seeking monetary compensation as an asset in the bankruptcy.  The Eleventh Circuit found in both cases that there was a duty to disclose the federal lawsuit as an asset in the bankruptcy case; that the failure to reflect the lawsuit in the bankruptcy case was a breach of that duty resulting in inconsistent positions under oath; that the district court, in its discretion, could infer from the record the requisite intent to make a mockery of the judicial system; and thus, that the court's application of the doctrine of judicial estoppel to grant summary judgment was not clear error.  *See Robinson,* 595 F.3d at 1275-77; *Burnes,* 291 F.3d at 1286-88.

Defendants urge the Court to apply *Robinson* and *Burnes* and grant summary judgment or dismissal in their favor on *all* of Plaintiff's overtime claims because she is presently seeking unpaid wages for overtime hours that she intentionally omitted, under penalty of perjury, in the prior bankruptcy case.  There are several problems with Defendants' analogy to *Robinson* and *Burnes* to the extent that Defendants request dismissal or judgment on all of Plaintiff's claims.

First, *Robinson* and *Burnes* involved discrimination claims that the plaintiffs were aware of while their bankruptcy cases were pending and that clearly would have been considered assets of the estate if they had been disclosed.  Plaintiff's overtime claims here were not filed until December 2015, after the bankruptcy case was already closed.  In other

words, the actual lawsuit was not pending at the same time that the bankruptcy case was pending. Thus, *Robinson* and *Burnes* are not particularly instructive to the extent that Defendants seek a dismissal of all of Plaintiff's claims. However, as discussed further below, application of the flexible two-factor test discussed in *Robinson* and *Burnes* supports the Court's conclusion that Plaintiff should be precluded from asserting claims here that directly contradict her prior sworn statements in the bankruptcy case.

Second, in a Chapter 7 bankruptcy, any claim that accrued after the filing of the petition (November 2, 2012 in Plaintiff's case here) would remain Plaintiff's property and would not qualify as an asset of the estate. *See Ortega v. Bel Fuse, Inc.*, 546 B.R. 468 (S.D. Fla. 2016) (noting that: "Congress established this policy of separating pre-petition and post-petition assets to provide a fresh start for a debtor who has declared Chapter 7 bankruptcy. Thus, unlike a case filed under Chapter 11 or 13, the Chapter 7 debtor retains possession of property—or legal claims—acquired after he files his bankruptcy petition.") (internal citations omitted). Plaintiff argues in her response that the omission of her wages from CTHC results in no harm because the instant case does not involve FLSA claims that accrued prior to the filing of Plaintiff's bankruptcy, i.e., November 2, 2012, based on the statute of limitations, which bars any claims that accrued prior to December 15, 2012.

Plaintiff's response cites to *Ortega* and heavily relies on this second issue, that is, that post-petition overtime claims are not property of the bankruptcy estate and do not warrant judicial estoppel. In *Ortega*, the district court concluded that judicial estoppel would apply to bar only a "legal claim that is the property of the bankruptcy estate." *Id.* at 471. The court

ruled that any FLSA claim that accrued after the debtor filed the bankruptcy petition was not sufficiently "rooted in the pre-bankruptcy past." Thus, despite the debtor's failure to disclose the post-petition FLSA claim in the bankruptcy, the court found that the debtor could still maintain the FLSA claim in a subsequent proceeding. *Id.* at 472-73 ("Because Ortega was under no duty to disclose his Post-Petition Claims to the bankruptcy court, he is not judicially estopped from raising them now.") (internal citations omitted).

The weakness with Plaintiff's argument is that *Ortega* did not involve the same facts here; specifically, the debtor in *Ortega* did not entirely omit his wages and employment information like Plaintiff did in this case. Accordingly, although it makes sense that a failure to omit a claim that is not property of the bankruptcy estate results in no harm, precluding an application of judicial estoppel, it does not make logical sense that a failure to omit a large part of a debtor's income is without harm because the debtor had a duty to disclose that income. And, as explained above, that duty was a continuing duty. Indeed, in any bankruptcy case, the bankruptcy court relies heavily on the debtor's statements of financial interest and corresponding schedules to determine the appropriateness of the discharge. Thus, the Court is not convinced that Plaintiff's omissions were harmless despite the fact that any claim related to those wages would have been post-petition.

The third issue relates to the second issue to the extent that the law is clear that overtime claims are accrued as the hours are worked, meaning, with each hour worked in excess of forty in a workweek for which the employee was not compensated, a separate FLSA claim for that overtime compensation is created. *See Knight v. Columbus, Ga.*, 19

F.3d 579, 581 (11th Cir. 1994) ("It is well settled that [a] separate cause of action for overtime compensation accrues at each regular payday immediately following the work period during which the services were rendered and for which the overtime compensation is claimed."). It follows then that Plaintiff's overtime claims related to hours she worked after the bankruptcy case was closed could not have accrued during her bankruptcy case. This also precludes Defendants' request that this Court dismiss all of Plaintiff's FLSA claims here. But the issue of when the FLSA claims accrued does not render Plaintiff's behavior harmless to the extent that she misrepresented her income during the bankruptcy case.

Having discussed the three issues above, which reflect that it would be inappropriate to apply judicial estoppel to bar all of Plaintiff's FLSA claims, the Court now turns to the big picture, the purpose behind the equitable doctrine of judicial estoppel. The purpose is to prevent parties from making a mockery of justice by asserting inconsistent sworn statements. A plaintiff should not be able to deliberately change positions based on the exigencies of the moment and the applicability of judicial estoppel does not involve an exhaustive formula. Rather, the doctrine's applicability should be based on the particular facts of the case, keeping the equities of the situation in mind. Under this guidance, the Court finds a number of facts in this case telling: Plaintiff's response provides neither an explanation for her inconsistent behavior, nor a defense for her failure to list her employment at CTHC and her wages from CTHC in the bankruptcy case.

Plaintiff's omissions in her bankruptcy case are particularly astounding in light of her allegations in this case. Assuming the truth of Plaintiff's answers to the Court's

interrogatories and her deposition testimony, in 2012 and 2013, Plaintiff worked for CTHC for approximately sixty-two hours a week, which does not even include the alleged weekends she worked.  Contrast that sworn testimony with Plaintiff's sworn bankruptcy papers, which claimed that she was not working for or receiving income from CTHC in 2012 and 2013 and, therefore, she could not have been accruing overtime hours in 2012 and 2013, as she alleges in this litigation.  Arguably, Plaintiff's inconsistent statements and omissions are more severe than the cases involving the omission of a *potential* claim because entirely omitting an employment relationship and the wages stemming from same has a direct impact on the calculation of Plaintiff's income, a crucial factor in any bankruptcy case.

Notably, "[t]he application of judicial estoppel does not require that the nondisclosure must lead to a different result in the bankruptcy proceeding.  Rather, the motive to conceal stems from the possibility of defrauding the courts and not from any actual fraudulent result." *Robinson*, 595 F.3d at 1275.  The omission of Plaintiff's wages from CTHC resulted in a Chapter 7 discharge of $240,726.00 in consumer debt, a discharge she probably would not have otherwise been entitled to had she told the truth about her income.  Pursuant to her scheme, the bankruptcy court accepted Plaintiff's sworn statements about her then-current and future income and granted her full relief by discharging her debts without payment, thus leaving her creditors empty handed.

In sum, because Plaintiff does not dispute the filings she made in bankruptcy court, it is undisputed that Plaintiff made material misrepresentations to the bankruptcy court as to the amount of her income in 2012 and 2013, which allowed her to fraudulently discharge

$240,726.00 in consumer debt without payment.  As such, although this case does not fit neatly within Eleventh Circuit precedent on judicial estoppel, the Court concludes that the two elements of judicial estoppel are met here with respect to the periods of time that directly overlap.  The Court rules, as a matter of law, that Plaintiff may not maintain any claim for overtime compensation in this case for the period of time that her bankruptcy case was pending.  The record is undisputed that she took materially inconsistent positions under oath in separate federal courts and, if allowed to proceed, Plaintiff's misrepresentations would make a mockery of the judicial system by allowing her to recover wages in this lawsuit for hours she swore in a previous suit did not exist.  Any other outcome would permit Plaintiff to play fast and loose with the courts to suit her self interest.

It is therefore **ORDERED AND ADJUDGED** that:

1. Defendants' Dispositive Motion for Summary Judgment and for Sanctions (Dkt. 30) is granted in part and denied in part for the reasons explained herein.

2. Defendants are granted summary judgment in their favor on Plaintiff's overtime claims for the period of time of November 2, 2012 - April 8, 2013.

3. Defendants' Motion (Dkt. 30) is otherwise denied.

**DONE** and **ORDERED** in Tampa, Florida on March 16, 2017.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

-14-