## CONFIDENTIAL SETTLEMENT AND COMPLETE WAIVER/RELEASE AGREEMENT

This Confidential Settlement and Complete Waiver/Release Agreement ("Agreement" or "Settlement Agreement") is made and entered into by **Jeanette Worrell** ("Worrell"), on behalf of herself, her agents, representatives, assignees, heirs, executors, administrators, beneficiaries, and trustees, and **Community Therapy Home Care, Inc.** ("CTHC") and **Elaine R. MacCollom** ("MacCollom") (Worrell, CTHC and MacCollom collectively as the "Parties").

**WHEREAS,** Worrell has filed suit in the United States District Court, Middle District of Florida, case no. 8:15-cv-02866, against CTHC and MacCollom under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, ("FLSA") for the alleged failure to pay for overtime work and Florida common law for unjust enrichment (the "Claims");

**WHEREAS,** CTHC and MacCollom deny violating Worrell' rights or violating the law in any way;

**WHEREAS,** the Parties desire to compromise and settle all Claims that Worrell has or may have against CTHC and MacCollom and any entities, agents and persons related to CTHC or MacCollom, or both;

**WHEREAS,** the Parties wish to resolve all claims that Worrell has and may have and avoid further disruption and expense;

**WHEREAS,** the Parties agree that compromise and settlement of said Claims by Worrell against CTHC and MacCollom are not limited to the Claims, and this settlement includes all other legal and administrative actions, which are based on or related to the allegations of the Claims, to Worrell' employment and pay received from CTHC or to any other matter between Worrell and CTHC or MacCollom, or both, or other persons acting, or purporting to act, on behalf of CTHC or MacCollom;

**NOW, THEREFORE,** in consideration of the mutual covenants and promises set forth in this Agreement, the Parties agree as follows:

1. **NON-ADMISSION.**

    1.1. This Agreement shall not in any way be construed as an admission that either CTHC or MacCollom acted wrongfully with respect to Worrell or any other person, or that they, jointly or individually violated any law, rule, or regulation, or that Worrell has any rights whatsoever against CTHC and MacCollom and CTHC and MacCollom specifically disclaim any liability to or wrongful acts against Worrell or any other person. Furthermore, this Agreement was made to avoid the further expense and disruption and does

not constitute an adjudication or an admission of the merits of the Claims, or an adjudication or admission of any other matters released in this Agreement. Accordingly, this Agreement cannot be used in any way to imply or evidence that CTHC or MacCollom, jointly or individually, have engaged in any wrongdoing and this Agreement shall not be submitted, used or entered into evidence by any party hereto in any other proceeding and shall not be accorded any evidentiary or precedential value in any other proceeding except for a proceeding to enforce the terms of this Agreement or to otherwise evidence that Worrell has no viable remaining cause of action against CTHC and MacCollom. Further, CTHC and MacCollom both expressly deny that they owe Worrell any wages or liquidated damages or other relief sought.

1.2. If a Court requires that this Agreement be filed or otherwise submitted for its review or approval, Worrell will not object to CTHC's and MacCollom's request that the Court permit them to file this Agreement under seal or review it in camera.

2. **FINANCIAL TERMS OF AGREEMENT.**

2.1. In exchange for the promises made by and in consideration for the terms entered into by Worrell in this Agreement, CTHC and MacCollom agree to pay Worrell the total sum of $20,000.00 (the "Gross Settlement Amount" which includes attorneys' fees, costs and expenses in section 2.2). The Gross Settlement Amount shall be allocated as follows: to Worrell in the gross amount of $10,000.00 payable (a) in the gross amount of $5,000.00, less all applicable deductions, representing alleged overtime wages; and (b) in the gross amount of $5,000.00 representing non-wage income, for which a 1099 shall issue. CTHC and MacCollom agree to pay Worrell her portion ($10,000.00 less withholding as described above) of the Gross Settlement Amount in three equal installment payments. The first installment payment will be due on January 15, 2018 and will be made by two checks: one check in the amount of $1,666.67 less payroll taxes, and one check in the gross amount of $1,666.67. The second installment payment will be due on February 15, 2018 and will be made by two checks: one check in the amount of $1,666.67 less payroll taxes, and one check in the gross amount of $1,666.67. The third installment payment will be due on March 15, 2018 and will be made by two checks: one check in the amount of $1,666.67 less payroll taxes, and one check in the gross amount of $1,666.67. Each installment payment will be delivered to the Berman Law Firm on or before the due date for each installment payment.

2.2. The remaining proceeds from the Gross Settlement Amount in the amount of $10,000.00 shall be paid by CTHC and MacCollom to Worrell' legal

counsel, in a check made payable to Berman Law Firm, for which a 1099 shall issue, representing attorneys' fees, costs and expenses. CTHC and MacCollom agree to pay Berman Law Firm its portion ($10,000.00) of the Gross Settlement Amount in three equal installment payments. The first installment payment of $3,333.33 will be due on January 15, 2018, the second installment payment of $3,333.33 will be due on February 15, 2018 and the third installment payment of $3,333.33 will be due on March 15, 2018. Each installment payment will be delivered to the Berman Law Firm on or before the due date for each installment payment.

2.3. Worrell acknowledges that the above payments represent a complete resolution of any and all claims she may have against CTHC and MacCollom including, but not limited to, all claims under the FLSA and Florida state law. Worrell acknowledges and agrees that all of her claims are fully satisfied. Worrell acknowledges that she is responsible for any tax payments which may be required to be made on the settlement amount and agree to indemnify and hold CTHC and MacCollom harmless with respect to any taxes, interest, or penalties other than that portion of withholdings and payroll taxes payable by CTHC as her employer. CTHC and MacCollom make no warranty or representation to Worrell or her attorney regarding the tax consequences of these payments.

2.4. The Parties agree that, except as otherwise provided in Subparagraph 2.2, the Parties will bear their own attorneys' fees, costs and expenses incurred pursuing the Claims and this settlement, and neither of the Parties owes the other fees, costs or litigation expenses.

3. **WAIVER AND RELEASE OF CLAIMS.**

3.1. In exchange for the consideration described in Subparagraphs 2.1 and 2.2, the receipt and sufficiency of which Worrell hereby acknowledges, Worrell forever, irrevocably, and unconditionally waives, releases, and discharges CTHC and MacCollom, their predecessors, successors, all former, current, and future related companies, divisions, subsidiaries, affiliates, and parents, and all of CTHC's and MacCollom's respective former, current, and future directors, officers, employees, agents, representatives, attorneys, fiduciaries, insurers, assigns, heirs, executors, administrators, beneficiaries, and trustees (collectively, the **"Released Parties"**), from any and all claims, charges, complaints, actions, causes of action, suits, grievances, controversies, disputes, demands, agreements, contracts, covenants, promises, liabilities, judgments, obligations, debts, damages, attorneys' fees, costs, and any other liabilities of any kind, nature, description, or character **("Claims")** that Worrell may have against any or all of the Released Parties, including all

        Claims arising out of her employment with CTHC and the termination of said employment, and all claims arising out of any other fact, condition, circumstance, or occurrence whatsoever from the beginning of time up to and including the date of this Agreement, whether known or unknown, suspected or concealed, presently asserted or otherwise (the **"Released Claims"**).

3.2.   This release includes all claims of every nature whatsoever. Without limiting the broad nature and scope this release, this release includes, but is not limited to, any and all claims, demands, damages, liquidated damages, or causes of action for unpaid wages and overtime compensation, claims of discrimination, harassment, retaliation, negligence, breach of contract, wrongful termination, retaliatory or discriminatory discharge, assault, battery, negligent supervision, negligent hiring, negligent retention, claims arising under any federal, state, or local employment laws, regulations, or executive orders regulating employment, including, without limitation, the Fair Labor Standards Act; 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964; the federal Equal Pay Act; the Age Discrimination in Employment Act; the Older Workers Benefits Protection Act; the Americans with Disabilities Act; the Sarbanes-Oxley Act; the Family and Medical Leave Act; the Employee Retirement Income Security Act; the Workers' Adjustment and Retraining Notification Act; the National Labor Relations Act; the Immigration Reform and Control Act; the Fair Credit Reporting Act; whistleblower acts, workers' compensation retaliation acts, wage payment laws, minimum wage acts, equal pay acts; state and federal constitutions; and any other federal, state or local statute or ordinance relating to or dealing with unpaid wages, employment, employment discrimination, retaliation or wrongful termination on any basis. This release of claims, demands, damages and causes of action also includes, but is not limited to:
(i) any and all claims, demands and causes of action for past or future wage loss, employee benefits, bonuses, attorneys' fees and costs, penalties and damages of all types, including, but not limited to, liquidated damages, punitive damages, compensatory damages, emotional distress damages or reputational damages; breach of any employment contract (whether express or implied) between Worrell and the Released Parties.

3.3.   Worrell represents and warrants that she has not assigned or transferred, or purported to assign or transfer, to any person or entity any of the Released Claims. Worrell agrees to indemnify and hold harmless the Released Parties from and against any and all claims suffered or incurred by the Released Parties based on, arising out of, or in connection with any such assignment, transfer, or purported assignment or transfer.

3.4.   Worrell acknowledges and agrees that the Waiver and Release of Claims in this Paragraph 3 is an essential and material term of this Agreement without

which the Parties could not have reached a settlement. Worrell affirms that she understands and acknowledges the significance and consequences of Paragraph 3.

4. **COVENANT NOT TO SUE.**

   4.1. A "covenant not to sue" is a legal term that means a party promises not to file a lawsuit against another in court. It is different from the Waiver and Release of Claims contained in Paragraph 3.

   4.2. In exchange for the consideration described in Paragraph 2 and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Worrell further agrees never to institute any lawsuit, complaint, proceeding, grievance, or action of any kind at law, in equity, or otherwise in any court of the United States, any state, or any municipality against any of the Released Parties for any of the Released Claims. Worrell also agrees that she will not join, participate in, or consent to opt into any FLSA suit claiming that she is similarly situated to any of the Released Parties' current or former employees, and that she will elect to opt out of any state and federal law action against any of the Released Parties of which she is involuntarily made a member or participant.

   4.3. If Worrell violates Subparagraph 4.2 by filing, joining, participating, or opting into any lawsuit against any of the Released Parties for any Released Claims, Worrell agrees that she shall be liable to any and all Released Parties that are party to the lawsuit for such Released Parties' reasonable attorneys' fees and other costs incurred in defending against the lawsuit up to $8,750.00. Furthermore, if Worrell sues, joins participates or opts into any lawsuit against, any of the Released Parties for any Released Claims, Worrell agrees that she may be required, at the option of such Released Parties, to return all but One Hundred Dollars and No Cents ($100.00) of the consideration paid to Worrell (as set forth on that Worrell's Acceptance and Verification page) pursuant to this Agreement, which amount Worrell expressly acknowledges constitutes good and valuable consideration for all of the promises and covenants in this Agreement. However, this Subparagraph shall not be enforced to the extent its enforcement would violate the Older Workers Benefit Protection Act.

   4.4. Nothing in Subparagraph 4.3 shall apply to prohibit Worrell suing to enforce the terms of this Agreement.

   4.5. Nothing in Subparagraph 4.3 precludes or restricts the Released Parties, collectively or separately, from seeking any and all damages, injunctive relief,

and other remedies against Worrell for violation of any paragraph of this Agreement.

4.6. Worrell acknowledges and agrees that the Covenant Not to Sue in Paragraph 4 is an essential and material term of this Agreement without which the Parties could not have reached a settlement. Worrell affirms that she understands and acknowledges the significance and consequences of Paragraph 4.

5. **CONFIDENTIALITY.**

5.1. The Parties agree that this settlement was reached through confidential settlement negotiations where all communications were considered confidential and privileged and that they have kept and shall keep strictly confidential the terms reached as reflected in this Agreement, all amounts paid pursuant to this Agreement, and all other terms and provisions of this Agreement, and all discussions, conversations, correspondence, and negotiations concerning and leading to the execution of this Agreement (**"Confidential Information"**). Except as may be required by law, Worrell shall not, directly or indirectly, provide, transmit, divulge, disclose, reveal, quote, describe, paraphrase, summarize, publicize, publish, or in any other manner communicate to or with any other person or entity, any Confidential Information, except to her attorneys, tax advisors, and spouse (if she has one), provided that such individuals also maintain the same confidentiality that is required of Worrell. In addition, except as may be required by law, CTHC and MacCollom shall not, directly or indirectly, provide, transmit, divulge, disclose, reveal, quote, describe, paraphrase, summarize, publicize, publish, or in any other manner communicate to or with any other person or entity, any Confidential Information, except to their attorneys, their tax advisors, and management team provided that such individuals also maintain the same confidentiality that is required of CTHC and MacCollom. This Agreement shall also not be construed to prohibit or limit communications with the EEOC or NLRB to the extent such communications cannot, by law, be limited by private agreement.

5.2. Except for the narrow circumstances described in Subparagraph 5.1, Worrell agrees that in response to any inquiries regarding Confidential Information, Worrell will simply state that the matter has been resolved and will make no other comment.

5.3. If Worrell is subpoenaed or otherwise required by process of law to disclose any Confidential Information, she must provide CTHC with notice of the subpoena or other court process within three (3) business days of receipt of the subpoena or notice of process. This notice obligation shall be satisfied

by delivering notice to counsel for CTHC and MacCollom by mail and email at mfraley@shankmanleone.com with a copy emailed to lshankman@shankmanleone.com. Such notice shall include, at a minimum: (i) a statement that Worrell is being required by process of law to disclose information prohibited from disclosure by this Agreement; (ii) identification of the date, court, and proceeding in which Worrell is being required to disclose such information; and (iii) a copy of the subpoena or other documentation of such service of process.

5.4. Nothing in this Paragraph 5 precludes or restricts CTHC or MacCollom from seeking any and all damages, injunctive relief, or other remedies against Worrell for violation of any paragraph of the Agreement.

6. **NON-DISPARAGEMENT and EMPLOYMENT RELATIONSHIP.**

   6.1. Worrell has no interest in and will not seek rehire or employment, either directly, through a temporary agency, or by any other method, with CTHC, its present or future parent companies, subsidiaries, or any of the other Released Parties.

   6.2. Worrell agrees that neither she, nor her agents, attorneys, personal representatives, or any person acting in concert with them or under their control will make or cause to be made against MacCollom or CTHC, including its officers, directors, agents, employees, affiliates, subsidiaries, parent corporations, predecessors, successors, assigns, personal representatives, or heirs any disparaging remark(s). Worrell further agrees that she will not discuss with any person, or make (or cause to be made) any posting to any website, periodical, social media, or other written or audio publication, the allegations made in connection with her claims against CTHC or MacCollom, the facts or perceptions on which those claims were based, or any opinions held by Worrell regarding CTHC's or MacCollom's compliance with laws governing the employment relationship.

   6.3. Worrell agrees that she shall take all necessary steps, including the payment of all fees and costs, to remove from any website, periodical, social media, or other written or audio publication any remarks in violation of Section 6.2 that Worrell and/or any of her agents, attorneys, personal representatives, and/or any person acting in concert with them or under their control make or cause to be made against CTHC and/or MacCollom and their respective officers, directors, agents, employees, affiliates, subsidiaries, parent corporations, predecessors, successors, assigns, personal representatives, and heirs. In the event of any breach of Sections 6.2 and 6.3 hereof, Worrell shall return all monies paid to her pursuant to this Agreement, forfeit her entitlement to any amount of the Gross Settlement Amount, and pay all fees and costs associated with the enforcement of such

provisions, including reasonable attorney's fees incurred.

7. **EFFECTIVE DATE.**

   7.1. The **"Effective Date"** shall be defined as the day after Worrell executes this Agreement.

   7.2. Worrell acknowledges that she has thoroughly read the entire Agreement, and specifically acknowledge the following:

   7.2.1 Worrell understands the language of the settlement agreement and release, and that any questions she may have had during her review of the Agreement were explained to her satisfaction and understanding by retained legal counsel of her choosing;

   7.2.2. Worrell understands that she is not waiving any rights or claims that may arise after the date this settlement agreement and release is executed;

   7.2.3. The waiver of rights and claims in this Agreement is in exchange for good and valuable consideration in addition to that which Worrell may already be entitled;

   7.2.4. Worrell has been advised of and had the opportunity to consult legal counsel of her choosing prior to executing this Agreement;

   7.2.5. Worrell has had a reasonable time to accept the terms of and sign this Agreement.

8. **OTHER AGREEMENTS BY WORRELL.**

   8.1. Worrell acknowledges and agrees that:

   8.1.1. She is not entitled to consideration from CTHC or MacCollom or the other Released Parties other than as set forth in this Agreement;

   8.1.2. That upon her receipt of the the Gross Settlement Amount she has been paid and has received all leave (paid or unpaid), compensation, wages, overtime pay, bonuses, expense reimbursement, and commissions to which she is or may be entitled and that no other leave (paid or unpaid), compensation, wages, bonuses, expense reimbursement, overtime pay or commissions are due to her under applicable law, including but not

        limited to the Fair Labor Standards Act or Florida state law, under CTHC's policies, under any agreements between Worrell and CTHC or MacCollom, or both, or otherwise.

    8.1.3.  Other than this matter, she has not filed, joined in, or been a beneficiary of any other complaints, charges, or proceedings against CTHC or MacCollom or the other Released Parties with any local, state, or federal agency or court, excluding claims for workers' compensation or unemployment compensation;

9. **ENTIRE AGREEMENT.**

    9.1.  The Parties acknowledge and agree that this Agreement includes Worrell's acceptance and verification of the settlement agreement.

    9.2.  The Parties agree that this Agreement sets forth the entire agreement between the Parties regarding settlement, including the Released Claims, and supersedes any other written or oral statements, representations, communications, understandings, promises, or agreements between the Parties.

    9.3.  The Parties agree that no amendment or modification of this Agreement shall be binding on the Parties unless reduced to writing and signed by all Parties.

10. **CONSTRUCTION AND INTERPRETATION.**

    10.1.  The Parties agree that this Agreement shall be interpreted and construed in accordance with the laws of the State of Florida.

    10.2.  The Parties acknowledge and agree that the terms and conditions of this Agreement are the result of lengthy, intensive arms-length negotiations between the Parties and that this Agreement shall not be construed in favor of or against any of the Parties by reason of their participation in the drafting of this Agreement.

    10.3.  The Parties agree that the headings of the Paragraphs in this Agreement are intended for convenient reference only, and the same shall not be, or deemed to be, interpretative of the contents or scope of such provisions.

11. **SEVERABILITY.**

    11.1  The Parties agree that if any phrase, clause, or provision of this Agreement is declared to be illegal, invalid, or unenforceable by a court of competent jurisdiction, this Agreement may be nullified at the option of CTHC or MacCollom upon which Worrell must return all monies paid by CTHC and

MacCollom under this Agreement. If CTHC and MacCollom elect not to nullify this Agreement, then the phrase, clause or provision found to be illegal, invalid, or unenforceable shall be severed from this Agreement and all other terms shall remain in full force and effect, excepting only that Worrell may nullify this Agreement if the financial terms contained in Section 2.1 of the Agreement are declared to be illegal, invalid, or unenforceable by a court of competent jurisdiction.

12. **EXECUTION.**

   12.1. The Parties agree that this Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.

   12.2. WORRELL FURTHER STATES AND AGREES THAT SHE HAS CAREFULLY READ THIS AGREEMENT; THAT SHE HAS HAD IT REVIEWED BY HER ATTORNEY; THAT IT HAS BEEN FULLY EXPLAINED TO HER BY HER ATTORNEY; THAT SHE FULLY UNDERSTANDS THE FINAL AND BINDING EFFECT; THAT THE ONLY PROMISES MADE TO HER TO SIGN THIS AGREEMENT ARE THOSE STATED IN THIS AGREEMENT; THAT SHE HAS HAD A REASONABLE PERIOD OF TIME WITHIN WHICH TO CONSIDER THIS AGREEMENT; AND THAT SHE IS SIGNING THIS AGREEMENT VOLUNTARILY WITH THE FULL INTENT OF RELEASING CTHC AND MACCOLLOM FROM ANY AND ALL CLAIMS.

**For Community Therapy Home Care, Inc.:**

_[signature: Elaine R MacCollom]_

Title: __Administrator__

Date: __12/1__, 2017

**Elaine R. MacCollom:**

_[signature: Elaine R McCollom]_

Date: __12/1__, 2017

Jeanette Worrell

_[signature]_

Date: 12/6, 2017